SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
JEANNIE KIM, CAL. Bar No. 270713
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
E mails:    okatz@sheppardmullin.com
    jekim@sheppardmullin.com

[Proposed] Attorneys for Debtors FORMATION GROUP FUND I, L.P., FORMATION GROUP GP I, LLC, and FORMATION GROUP (CAYMAN) FUND I, L.P.

## UNITED STATES BANKRUPTCY COURT

### NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>FORMATION GROUP FUND I, L.P., a Delaware limited partnership, FORMATION GROUP GP I, LLC, a Delaware limited company, and FORMATION GROUP (CAYMAN) FUND I, L.P., a Cayman Islands exempted limited partnership,<br><br>    Debtors,[1]<br><br>FORMATION GROUP FUND I, L.P., a Delaware limited partnership, FORMATION GROUP GP I, LLC, a Delaware limited company, and FORMATION GROUP (CAYMAN) FUND I, L.P., a Cayman Islands exempted limited partnership,<br><br>    Plaintiffs,<br>v.<br><br>YESCO HOLDINGS CO., LTD., a corporation organized under the laws of the Republic of Korea<br><br>    Defendant. | Bankr. Case No.: 22-50302<br><br>Chapter 11<br><br>(Jointly Administered with Case Nos. 22-50303 and 22-50337)<br><br>Adv. Proceeding No. 22-_____<br><br>**COMPLAINT (I) FOR DECLARATORY JUDGMENT RELIEF, (II) FOR MANDATORY SUBORDINATION PURSUANT TO 11 U.S.C. § 510(b); (III) TO AVOID AND RECOVER FRAUDULENT TRANSFERS PURSUANT TO 11 U.S.C. §§ 544(b)(1) AND 550, APPLYING CAL. CIV. CODE §§ 3439.04(a)(2), 3439.07(a)(1), 3439.08(b)(1); (IV) TO AVOID AND RECOVER FRAUDULENT TRANSFERS PURSUANT TO 11. U.S.C. §§ 548 AND 550** |

---

[1] The last four digits of Formation Group Fund I, L.P.'s tax identification number are 6810, and the last four digits of Formation Group I, LLC's tax identification number are 6463; and the last four digits of Formation Group (Cayman) Fund I, L.P. are 6450. The Debtors' principal place of business and service address in these chapter 11 cases is 451 University Avenue, Palo Alto, CA 94103

Plaintiffs FORMATION GROUP FUND I, L.P., a Delaware limited partnership ("FGF"), FORMATION GROUP GP I, LLC, a Delaware limited liability company ("Formation General Partner"), and FORMATION GROUP (CAYMAN) FUND I, L.P., a Cayman Islands exempted limited partnership (the "Cayman Fund," and together with "FGF," collectively, the "Funds"), each a debtor and debtor in possession (collectively, "Debtors" or "Plaintiffs") in the above-captioned chapter 11 cases, and as plaintiffs in the above-captioned adversary proceeding hereby allege and complain against Defendant YESCO HOLDINGS CO., LTD. (formerly known as Yesco Co. Ltd.), a corporation duly organized and existing under the laws of the Republic of Korea ("Yesco" or "Defendant"), as follows:

## I.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, in that this adversary proceeding is a civil proceeding arising in and related to a case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2. The instant adversary proceeding is a core proceeding brought pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (H),(K) and (O). Debtors consent to the entry of a final order or judgment by the Court in this matter. Venue in this district is proper under 28 U.S.C. § 1409(a).

3. This adversary proceeding is commenced pursuant to Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and sections 105, 510, 544, 548, 550 and 1107 of the Bankruptcy Code.

## II.

## PARTIES

4. On information and belief, Debtors allege that Yesco is a corporation organized and existing under the laws of Korea, having its principal place of business at 20Fl., 92, Hangang-daero, Yongsan-gu, Seoul, Republic of Korea.

5. Yesco is a disputed creditor and limited partner of FGF.

6. At all relevant times herein, FGF has been a limited partnership existing under the laws of the State of Delaware and with its principal place of business located at 435 Tasso Street,

SMRH:4821-7788-8460                                                                                                               COMPLAINT
-2-

Suite 315, Palo Alto, California, 94301.[2]  Prior to December 2016, FGF was formerly known as F8 Asia Growth SPV, L.P.

7. At all relevant times herein, Formation General Partner has been a limited liability company existing under the laws of the State of Delaware with its principal place of busines located at 435 Tasso Street, Suite 315, Palo Alto, California, 94301.  Formation General Partner is the general partner of FGF and the Cayman Fund, and formerly was known as F8 Asia Growth GP I, LLC.

8. At all relevant times herein, the Cayman Fund has been an exempt limited partnership existing under the laws of the Cayman Islands (collectively, "Cayman Law") and with its principal place of business located at 435 Tasso Street, Suite 315, Palo Alto, California, 94301.[3]  The Cayman Fund is an affiliate of FGF and formerly was known as Formation Group SPV (Offshore), L.P.

9. FGF and Formation General Partner filed their respective petitions for relief under chapter 11 of the Bankruptcy Code on April 11, 2022.

10. Under applicable Cayman Law it is an open question whether the Cayman Fund is a separately regarded legal entity capable of filing for bankruptcy relief.  As such, the Cayman Fund did **not** file a petition for relief under chapter 11 of the Bankruptcy Code at the same time as FGF or Formation General Partner.  Subsequently, in an abundance of caution and with input from [proposed] Cayman counsel, the Cayman Fund decided to initiate its own bankruptcy case via the filing of a voluntary petition for relief on April 21, 2022.

### III.

### GENERAL ALLEGATIONS

A. **The Funds' Investments in AHB and EVA**

11. The Funds were formed for the primary purpose of making venture capital investments, principally by investing in and holding equity and equity-oriented securities of early and expansion stage companies located primarily in the U.S. and Asia (excluding China).

---

[2] Debtors subsequently moved to 451 University Ave., Palo Alto, California, 94301.
[3] The Cayman Fund subsequently moved to 451 University Ave., Palo Alto, California, 94301.

SMRH:4821-7788-8460                                                                                               COMPLAINT

12. Each of the Funds is an equity investor in A Honestbee Pte Ltd, a private company limited incorporated under the laws of Singapore ("AHB"). AHB is in the business of providing on-demand delivery from leading groceries and retailers in Singapore, Hong Kong and Taipei. FGF owns or controls twenty percent (20%) or more of the common shares of AHB ("AHB Shares") on a fully diluted basis, making AHB an "affiliate" of FGF under the Bankruptcy Code.

13. Each of the Funds is an equity investor in EVA Automation, Inc., a Delaware corporation ("EVA"), whose mission is to enhance the user experience of audio and visual in the smart home. FGF owns or controls twenty percent (20%) or more of the common shares of the company ("EVA Shares"), making EVA an "affiliate" of FGF under the Bankruptcy Code.

**B.    Defendant's Optioned Shares**

14. Defendant entered into a series of option agreements as described in the paragraphs that follow:

**The First EVA Transaction**

15. On or about July 6, 2016, Defendant entered into an investment agreement whereby Defendant agreed to purchase 710,651 convertible preferred Series B shares of EVA for an aggregate purchase price of $9,999,996.62 ("EVA Optioned Shares").

16. In connection with the EVA Investment, also on July 6, 2016, Defendant entered into an Option Agreement ("First EVA Option Agreement").

17. Pursuant to the EVA Option Agreement, Defendant was entitled to sell the EVA Optioned Shares to FGF at any time after its purchase until July 6, 2021 at a price calculated based on the acquisition price per share of the EVA Optioned Shares multiplied by the number of shares sold to FGF.

18. The First EVA Option Agreement expired by its terms on July 6, 2021.

SMRH:4821-7788-8460                                                                                                       COMPLAINT

### The First AHB Transaction

19. On or about July 28, 2017, Defendant entered into an investment agreement with AHB whereby Defendant agreed to purchase 3,750 ordinary shares of AHB[4] for an aggregate purchase price of $10,000,012.50 ("AHB Optioned Shares").

20. In connection with Defendant's purchase of the AHB Optioned Shares, FGF and Defendant entered into the Option Agreement also dated July 28, 2017 ("First AHB Option Agreement") whereby FGF irrevocably granted to Defendant the right to sell the AHB Optioned Shares to FGF (the "AHB Shares Put Option").

21. Pursuant to the AHB Option Agreement, Defendant was entitled to sell the AHB Optioned Shares to FGF at any time during the 90-day period commencing one year after its purchase. The option price at which Defendant was entitled to sell the AHB Optioned Shares is calculated based on the acquisition price per share of the AHB Optioned Shares multiplied by the number of shares sold plus interest accrued at a rate of 15% per annum.

22. On or about October 30, 2018, the AHB Option Agreement was amended and restated to, *inter alia*, extend the "Put Option Period" to the time period "from July 28, 2018 to December 31, 2018."

23. The First AHB Option Agreement expired by its terms on December 31, 2018.

### The Second AHB Transaction

24. On or about November 3, 2017, Defendant entered into a second investment agreement with AHB whereby Defendant agreed to purchase 87,203 ordinary shares of AHB for an aggregate purchase price of $18,000,443.26 ("Additional AHB Optioned Shares").

25. In connection with Defendant's purchase of the Additional AHB Optioned Shares, FGF and Defendant entered into the Option Agreement also dated November 3, 2017 ("Second AHB Option Agreement") whereby FGF irrevocably granted to Defendant the right to sell the Additional AHB Optioned Shares to FGF (the "Additional AHB Shares Put Option").

---

[4] The original AHB Option Agreement (hereinafter defined) identified the company that issued the 3,750 ordinary shares as "Honestbee Pte Ltd.", a similarly named affiliate of AHB, The AHB Option Agreement was amended and restated on January 8, 2018 to correctly identify "A Honestbee Pte Ltd." as the issuer of the shares optioned thereunder.

26. Pursuant to the Second AHB Option Agreement, Defendant was entitled to sell the Additional AHB Optioned Shares to FGF at any time during the 90-day period commencing one year after its purchase, making the option period November 3, 2018 to February 1, 2019. The option price at which Defendant was entitled to sell the Additional AHB Optioned Shares is calculated based on the acquisition price per share of the Additional AHB Optioned Shares multiplied by the number of shares sold plus interest accrued at a rate of 15% per annum.

27. On or about January 8, 2018, the Second AHB Option Agreement was amended and restated, which did not extend or change the option period—it remained the above 90-day period beginning on November 3, 2018.

28. The Second AHB Option Agreement expired by its terms on February 1, 2019.

### The Second EVA Transaction

29. On or about June 7, 2018, Defendant entered into an investment agreement with EVA whereby Defendant agreed to purchase 3,553,255 Series B convertible preferred shares of EVA for an aggregate purchase price of $9,999,996.62 ("Additional EVA Optioned Shares").

30. In connection with Defendant's purchase of the Additional EVA Optioned Shares, FGF, Defendant and F8 GoldAu SPV, L.P., an affiliate of Debtors ("FGF Affiliate") entered into the Option Agreement also dated June 7, 2018 ("Second EVA Option Agreement") whereby FGF irrevocably granted to Defendant the right to sell the Additional EVA Optioned Shares to FGF (the "Additional EVA Shares Put Option").

31. Pursuant to the Second EVA Option Agreement, Defendant was entitled to sell the Additional EVA Optioned Shares to FGF at any time during the thirty (30) day period immediately following the six (6) month anniversary date after its purchase. The exercise price for the Additional EVA Optioned Shares was calculated as the acquisition price per share of the Additional EVA Optioned Shares multiplied by the number of shares sold plus interest accrued at 8% per annum.

32. The Second EVA Option Agreement expired by its terms on January 6, 2019.

### Summary of Option Transactions and Key Terms

33. The above option transactions are summarized in the following table:

SMRH:4821-7788-8460  -6-  COMPLAINT

| Option Agreement | Face Amount | Expiration Date |
|---|---|---|
| First EVA | $9,999,996.62 | July 6, 2021 |
| First AHB | $10,000,012.50 | December 31, 2018 |
| Second EVA | $18,000,443.26 | February 1, 2019 |
| Second AHB | $9,999,996.62 | January 6, 2019 |

34. The EVA Optioned Shares, AHB Optioned Shares, Additional EVA Optioned Shares and Additional AHB Optioned Shares are collectively referred to herein as the "Optioned Shares."

35. The First EVA Option Agreement, the Second EVA Option Agreement, the First AHB Option Agreement, and the Second AHB Option Agreement are referred to herein, collectively, as the "Put Options" or the "Put Option Agreements."

36. The Put Options each contain a Delaware choice of law provision. And each of the Optioned Shares and the Put Options constitute a "security" under the Bankruptcy Code.

37. Each Put Option expressly required Defendant's put option notice, or any other notice under the agreements, to be:

> . . . in writing and sent by certified mail, return receipt requested, by overnight delivery service, with all charges prepaid, by hand delivery, or by Electronic Transmission to such party's address as set forth beneath its signature on the signature page to this Agreement.

38. The only "address" "set forth beneath" FGF's "signature on the signature page" to each of the Put Option agreements is: "435 Tasso Street, Ste. 315, Palo Alto, CA 94301 USA."

39. None of the Put Option agreements includes any different mailing addresses or, importantly, email addresses to which written notices to which the parties agreed any written notices could be sent. These notice provisions were never amended. Delaware courts require contracting parties to "strictly" follow the negotiated, unambiguous notice instruction set forth in the parties' agreement. *See, e.g.*, *PR Acquisitions, LLC v. Midland Funding LLC*, 2018 WL 2041521, at *7, C.A. No. 2017-0465-TMR (Del. Ch. April 30, 2018).

## C. Defendant Failed to Timely Exercise Three of the Four Option Agreements

40. The Defendant did not timely exercise its rights in clear compliance with the following three option agreements: (a) the AHB Option Agreement, (b) the Second AHB Option Agreement, and (c) the Second EVA Option Agreement (collectively, the "Terminated Put Options"). As discussed below, Defendant attempted to remedy this deficiency via subsequent letter agreements with Debtors, but such letters were entered into without any consideration in favor of Debtors.

41. As to the lone option agreement (the EVA Option Agreement) where the Defendant arguably timely exercised its rights, as discussed below, that claim is mandatorily subordinated.

## D. Defendant's After-The-Fact Letter Campaign and Threats of Suit

42. On or about February 12, 2019, FGF and Defendant entered into a letter agreement ("Extension Letter") which, among other things, sought to extend the deadline for performance by FGF under the Terminated Put Options.

43. Prior to the execution of the Extension Letter every one of the Terminated Put Options had already expired as a result of Defendant's failure to comply with the notice provisions of the Put Option Agreements. As a result, there was no underlying agreement then in effect that needed to be extended, and no consideration was provided to FGF on account of the Extension Letter.

44. Later, on or about June 28, 2019, each of FGF and the Cayman Fund—*an entity that was never a party to any of the Put Options*—entered into separate, gratuitous letter agreements (the "Security Letter") with Defendant pursuant to which the Funds pledged and assigned to Defendant a security interest in all of their respective personal and fixture assets (the "Yesco Security Interest") to secure payment and performance in full by FGF to purchase the EVA Optioned Shares (under the already Put Option Agreements. Because all of the Put Options had already expired by their terms, the Funds received no consideration for granting the Yesco Security Interest.

45. Also on June 28, 2019, Defendant filed the UCC Financing Statement, Initial Filing No. 2019 4496084, naming FGF, as debtor, and Yesco, as secured party, with the Delaware

Secretary of State which describes the collateral as consisting of "all assets." Defendant also filed UCC Financing Statement, Initial Filing No. 2019068541, naming the Cayman Fund as debtor and Yesco as secured party, with the Washington D.C. Recorder of Deeds which describes the collateral consisting of "all assets." At the time the Funds granted the Yesco Security Interest, each of the Funds was insolvent or became insolvent; or intended or believed they would incur debts beyond their ability to pay as such debts matured as a result of the Yesco Security Interest having been granted; or each of the Funds was left with unreasonably small capital after granting the Yesco Security Interest.

46. Subsequently, and for nothing of value or reasonably equivalent value in exchange, Defendant entered into yet another letter agreement from the Funds, dated September 20, 2019 (the "September 2019 Letter Agreement") purporting to extend each of the Funds' respective deadlines to pay the strike price on the very-much-expired Put Options.

47. On or about November 23, 2021, Defendant served each of the Funds with a demand for arbitration and initiated proceedings with the International Centre for Dispute Resolution, a division of the American Arbitration Association. Defendant alleged the Funds' "default" under the September 2019 Letter Agreement and sued for turnover and replevin (*i.e.*, possession) of property of the Funds' estates; namely, certain stock certificates and promissory notes.

48. On April 10, 2022, each of FGF and Formation General Partner filed voluntary petitions for relief under the Bankruptcy Code. On April 21, 2022, the Cayman Fund filed a voluntary petition for relief under the Bankruptcy Code, and, together with FGF and Formation General Partner, collectively requested joint administration of their respective chapter 11 cases. Each Debtor continues in possession of its property and manages its affairs as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

49. Additional information about Debtors, including Debtors' business, financial condition, corporate structure and the reasons and objectives of this case are set forth in the First Day Declaration of Rei Young Jang filed on April 10, 2022, in Case No. 22-50302, at Docket No. 5.

# FIRST CLAIM FOR RELIEF

## (Declaratory Judgment Under Fed. R. Bankr. P. 7001(9))

50. Debtors incorporate each and every allegation contained in paragraphs 1 through 49, inclusive, as though fully set forth herein.

51. Under Delaware law, time is always of the essence in an option contract and, unless properly exercised in strict compliance with the terms of the option contract, the option expires on the specified date. Debtors request declaratory judgment relief that:

    a. Each and every one of the Terminated Put Options expired by its terms, including as a result of Defendant's failure to exercise each such Terminated Put Option pursuant to the terms of the respective Put Option Agreements.

    b. Though Defendant purported to "forebear" on its alleged rights to compel FGF to purchase the AHB Optioned Shares, Additional AHB Optioned Shares, and Additional EVA Optioned Shares, in actuality Defendant had no such rights;

    c. Defendant relied on threats of legal action to enforce the Terminated Put Options even after the expiry of such Terminated Put Options and, at the time such threats were made, Debtors were either insolvent or such claims, if realized upon, were intended to render Debtors insolvent; and

    d. The Funds received no consideration under the Extension Letter, Security Letter or September 2019 Letter Agreement (collectively, the "<u>Letter Agreements</u>") entered into subsequent to the expiration of the Put Options.

    e. The Cayman Fund was not a party to the Put Options and received no consideration in exchange for granting the pre-petition "extension letters" or the Yesco Security Interest.

52. In addition to the foregoing, Debtors object to the extent and validity of the liens asserted by Defendant for various reasons, including but not limited to, that the liens supposedly created by the Yesco Security Interest should be denied and declared void pursuant to 11 U.S.C. § 506(d) due to lack of consideration provided to each Debtor (the owners of the personal property subject to the lien). The Yesco Security Interest is also unenforceable under non-bankruptcy law

due to a failure of consideration.  N.Y. UCC § 9-203(b) ("[A] security interest is enforceable . . . only if (1) value has been given . . . ."); N.Y. UCC § 1-204 (defining value as (a) the commitment to extend or extension of credit; (b) the provision of a security interest in satisfaction of a preexisting claim; (c) the acceptance of delivery under a preexisting contract for purchase; or (d) "any consideration sufficient to support a simple contract"); *Reddy v. Mihos*, 160 A.D.3d 510, 514 (1st. Dept. 2018) (holding a third-party guaranty unenforceable because it did "not express, or even imply, any consideration for [the] promise, whether by way of benefit to [the guarantor] or detriment to plaintiff" even though the guaranty may have made the plaintiff "unlikely to sue," *i.e.*, forebear from suit despite the borrower's default, because it did not contain any "such a binding promise by plaintiff.").

53. Accordingly, Debtors seek declaratory judgment relief that Defendant does not and would not have an allowable claim (if any proof of claim were filed) against Debtors' estate.

## SECOND CLAIM FOR RELIEF

**(To Subordinate Claim and Lien Pursuant to 11 U.S.C. § 510(b))**

54. Debtors incorporate each and every allegation contained in paragraphs 1 through 53, inclusive, as though fully set forth herein.

55. Defendant asserts against Debtors claims (a) arising from rescission of a purchase or sale of a security of Debtors or of an affiliate of Debtors and/or (b) for damages arising from the purchase or sale of such security in the amounts demanded by Defendant in connection with its exercise of the Put Options.

56. Pursuant to 11 U.S.C. § 510(b), Debtors are entitled to a judgment subordinating Defendant's claims to all claims against and interests in Debtors.

## THIRD CLAIM FOR RELIEF

**(To Avoid and Recover Fraudulent Transfers Pursuant to**

**11 U.S.C. §§ 544(b)(1) and 550 and**

**Cal. Civ. Code §§ 3439.04(a)(1), 3439.07(a)(1) and 3439.08(b)(1))**

57. Debtors incorporate each and every allegation contained in paragraphs 1 through 56, inclusive, as though fully set forth herein.

58. The obligation of the Funds under the Put Option Agreements expired by their own terms as a result of Defendant's failure to properly and timely exercise its rights. Subsequently, via threats to Debtors, Defendant caused Debtors to enter into the Letter Agreements purporting to "extend," "forbear" or otherwise resuscitate Defendant's rights under the Put Option Agreement.

59. At the time Debtors entered into the Letter Agreements they were in no way obligated to perform under the Put Option Agreement, and, as a result, in entering into the Letter Agreements Debtors received no consideration.

60. At the time of entry into the Letter Agreements, Debtors were insolvent, became insolvent, or intended or believed they would incur debts beyond their ability to pay as such debts matured as a result of the Letter Agreements, granted and/or made, and/or were engaged or about to become engaged in a business or transaction for which the property remaining in their hands after the incurrence, granting and/or making of the Letter Agreements, was unreasonably small capital.

61. The Letter Agreements were entered into, incurred, granted and/or made by the Funds within four years of the filing of these bankruptcy cases.

62. Under 11 U.S.C. §§ 544(b)(1) and 550, Debtors may apply California state law to avoid the Letter Agreements and recover the assets transferred under such agreements.

63. Debtors' entry into the Letter Agreements constitutes a transfer of interests in property of Debtors as defined under section 3439.01 of the California Civil Code.

64. Debtors are entitled to avoid the Letter Agreements as a constructive fraudulent transfer pursuant to California Civil Code sections 3439.04(a)(2) and 3439.07(a)(1).

65. Under California Civil Code section 3439.08(b)(1), Debtors are entitled to recover from Defendant the assets transferred, or the value thereof, plus interest thereon as allowed by law.

## FOURTH CLAIM FOR RELIEF

### (To Avoid and Recover Fraudulent Transfers

### Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550(a))

66. Debtors incorporate each and every allegation contained in paragraphs 1 through 65, inclusive, as though fully set forth herein.

67. FGF incurred obligations to purchase the Optioned Shares from Yesco under the Option Agreements and, months later, Cayman Fund granted the Yesco Security Interest to secure FGF's obligation to repay Yesco for no or insufficient consideration.

68. The Cayman Fund received no, or less than reasonably equivalent, value in exchange for incurring, granting and/or making the Yesco Security Interest.

69. On the date the Cayman Fund granted the Yesco Security Interest, it was insolvent, became insolvent, or intended or believed it would incur debts beyond its ability to pay as such debts matured as a result of the Yesco Security Interest having been incurred, granted and/or made, and/or was engaged or about to become engaged in a business or transaction for which the property remaining in its hands after the incurrence, granting and/or making of the Yesco Security Interest, was unreasonably small capital.

70. The Yesco Security Interest was incurred, granted and/or made by the Cayman Fund within two years of the Cayman Petition Date.

71. Pursuant to 11 U.S.C. § 548(a)(1)(B), the Cayman Fund is entitled to judgment avoiding the Yesco Security Interest.

72. Pursuant to 11 U.S.C. § 550, the Cayman Fund is entitled to recover the avoided Yesco Security Interest from Defendant, plus interest thereon to the date of payment and the costs of this action.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

A. For declaratory judgment relief requested herein or, alternatively,

B. For mandatory subordination of Defendant's claims against FGF to all claims and interests in FGF,

C. For avoidance of the Letter Agreements and recovery of the assets transferred thereunder, or the value thereof,

D. For avoidance and recovery of the Yesco Security Interest granted by Cayman Fund, or the value thereof,

/ / /

/ / /

E.  For an award to Plaintiffs of costs, pre- and post-judgment interest, and

F.  For such other relief the Court deems equitable and just under the circumstances.

DATED: April 28, 2022

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  /s/ Ori Katz
ORI KATZ
JEANNIE KIM

[Proposed] Attorneys for Debtors
FORMATION GROUP FUND I, L.P.,
FORMATION GROUP GP I, LLC, and FORMATION
GROUP (CAYMAN) FUND I, L.P.